[Docket No. 22]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

BOIVAE FLEMING-MARTINEZ, appearing *pro se*,

    PLAINTIFF,

v.

NEW JERSEY DIVISION OF CHILD PROTECTION & PERMANENCY, et al.,

    DEFENDANTS.

Civil No. 20-13098 (RMB/SAK)

**OPINION**

**APPEARANCES**

Barkha Patel
Office of the Attorney General
Division of Law, Tort Litigation & Judiciary Section
25 W. Market Street
P.O. Box 116
Trenton, New Jersey 08625

    *On behalf of the DCP&P Defendants (the New Jersey Division of Child Protection and Permanency, Amanda Hammond, Natasha Cranmer, and Virginia Kenny)*

**BUMB, United States District Judge**

    This matter comes before the Court upon the Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendants the New Jersey Division of Child Protection and Permanency its officials Amanda Hammond, Natasha Cranmer, and Virginia Kenny. [Docket No. 22.] For the reasons set forth below, the motion shall be

granted.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Boivae Fleming-Martinez ("Plaintiff"), who is appearing *pro se*, initiated the present action upon filing the Complaint on September 22, 2020, alleging that certain of his constitutional and statutory rights were violated in connection with the placement and supervision of his minor children by the New Jersey Division of Child Protection and Permanency ("DCP&P"), DCP&P officials Amanda Hammond, Natasha Cranmer, and Virginia Kenny (together with DCP&P the "DCP&P Defendants"), a caseworker/social worker identified as "Ms. Johnson," and the mother of Plaintiff's minor children, Yvette Ramos ("Ms. Ramos"). [*See* Docket No. 1 ("Complaint")].

On April 19, 2021, in lieu of filing a formal answer to the Complaint, the DCP&P Defendants filed an initial motion to dismiss.[1] Thereafter, Plaintiff filed a Motion to Amend the Complaint, which was granted. [Docket Nos. 16, 17.] The First Amended Complaint ("FAC") was filed on November 29, 2021, abandoning claims against Ms. Ramos and alleging claims against only the DCP&P Defendants and "Ms. Johnson."[2] The instant Motion to Dismiss was filed by the DCP&P

---

[1] Defendant Virginia Kenny did not join the other DCP&P Defendants in filing the prior motion to dismiss or the pending motion, as counsel for the DCP&P Defendants entered an appearance on her behalf only after such motions were filed. [Docket No. 29.] DCP&P Defendant Virginia Kenny has, however, since joined the other DCP&P Defendants in the pending Motion to Dismiss. [*See* Docket No. 30.]

[2] Counsel has not entered an appearance on behalf of Defendant Ms. Johnson, identified in the FAC as a former DCP&P caseworker [Docket No. 18 ¶ 34], but in

Defendants on December 8, 2022. [Docket No. 22.]

In the FAC, Plaintiff alleges that over the course of a decade, from October 2009 through October 2019, the DCP&P Defendants' acts or omissions caused his minor children to be placed with and to remain in the custody and care of an unfit custodian, Ms. Ramos. [*Id.* ¶¶ 3–28.] Plaintiff alleges that during such time, a series of seven total "referrals" were made to DCP&P to report concerns about Ms. Ramos and her inability to properly care for her and Plaintiff's minor children. Plaintiff alleges that the first of these referrals was made on October 1, 2009, shortly after Ms. Ramos gave birth to another child. [*Id.* ¶ 3.] Later that month on October 26, 2009, a second referral regarding Ms. Ramos was made "based on the fact that [she] was living an unhealthy lifestyle and was involved in prostitution, while also neglecting her minor children" to the point where two of the children had to be hospitalized for pneumonia. [*Id.* ¶ 4.] DCP&P allegedly received two additional referrals regarding Ms. Ramos in November 2009, when Ms. Ramos left the minor children under the supervision of her boyfriend "who had previously abused his own child by breaking

---

Plaintiff's Opposition Brief as a "Social Worker." [Docket No. 27, at 4]. However, summons was returned executed on her behalf at the same time as the other DCP&P Defendants. [Docket No. 26.] Presumably, she is not affiliated with DCP&P and was never served. Since the 90-day period to effectuate service of process since Plaintiff filed the Complaint on September 22, 2020, has long passed, and since the claims against her now appear to be time-barred, good cause does not exist for such significant delay. Thus, the Court will dismiss the claims against Ms. Johnson, without prejudice, consistent with the requirements of Fed. R. Civ. P. 4(m). However, to the extent that Plaintiff's claims, arising out of the same circumstances and events described in the FAC, involve any other DCP&P agents (or employees of similar state agencies) acting within their official capacities, Plaintiff's claims against them are presumably barred for the same reasons identified herein.

the child's ribs," and then again after one of the children was "found wandering around the hotel parking lot where [Ms. Ramos] was currently residing." [*Id.* ¶¶ 6, 7.]

After this latest referral, Ms. Ramos was allegedly found guilty of neglect, at which point the DCP&P Defendants were supposedly granted care and supervision of the minor children sometime around July 2, 2010; however, the FAC also contains conflicting allegations that the children nevertheless remained in Ms. Ramos's custody at such time. [*Id.* ¶ 8.] Plaintiff alleges that soon thereafter, on July 12, 2010, DCP&P Defendants received yet another referral for Ms. Ramos concerning allegations of physical abuse. [*Id.* ¶ 9.]

According to the FAC, at some unspecified time thereafter, Ms. Ramos "finally contacted [Plaintiff] and told him to come get his children at which time Ms. Johnson . . . met [Plaintiff] at the place" where Ms. Ramos had been "staying with the minors **who were still in her custody** and told him to take the children back to California where he lived." [*Id.* ¶ 11 (emphasis in original).] Plaintiff alleges that until 2020, DCP&P Defendants failed to disclose important information to him about Ms. Ramos, including that she was engaged in illegal prostitution, using drugs, and had failed to adhere to the program put in place by DCP&P Defendants to mitigate these issues. [*Id.*] Plaintiff also alleges that DCP&P Defendants "failed to act by omission or commission to protect the health and safety of the minors." [*Id.* ¶ 13.] Plaintiff contends that the DCP&P Defendants then "gave [Plaintiff] his children and he flew back home with the minors to California." [*Id.* ¶ 14.] Afterwards, DCP&P Defendants allegedly "made a couple of visits" to the children in California, and

4

eventually notified Plaintiff that all necessary paperwork to grant him legal and physical custody of his minor children had been completed. [*Id.* at 14.]

In the FAC, Plaintiff alleges that DCP&P Defendants violated his Fourteenth Amendment right to procedural due process "by failing to have court proceedings to legally give [Plaintiff custody of] the minor children while he was in Atlantic City, New Jersey," which according to Plaintiff was also clearly required by applicable state laws and regulations that govern the actions of the DCP&P Defendants. [*Id.* ¶ 15–16.] Plaintiff also contends that the DCP&P Defendants erred by not informing the California Department of Social Services CPS of the revised custody arrangement as required under the Interstate Compact on the Placement of Children ("ICPC"), allegedly resulting in the Stockton Police Department mistakenly removing Plaintiff's minor children from his family's care in California on June 7, 2016, because "they had no record of the minor children being transferred to the state." [*Id.* ¶ 16.] To date, Plaintiff has not appended any documentation to his amended pleadings to establish that he or any of his family members were ever granted sole legal custody of his minor children.

Plaintiff contends that in August 2018, the minor children were finally removed from Ms. Ramos, but were not returned home to Plaintiff's family in California until October 2019. [*Id.* ¶ 28.] Plaintiff contends that "[t]he minors were in New Jersey [f]oster care for a period of 17 months" until Plaintiff was notified by DCP&P Defendants that they intended to "separate[e] the minor children and pu[t]

5

them up for adoption." [*Id.*] The FAC does not state the circumstances as to the timing or circumstances of such alleged modifications to the custody arrangement.

In sum, Plaintiff alleges that DCP&P Defendants failed to inform him of the abuse and neglect of his children by Ms. Ramos, failed to intervene to protect his minor children against such known abuse and neglect, failed to maintain required documentation and pursue state family court proceedings to grant him sole legal custody of his minor children, and that DCP&P erroneously maintains policies and practices that "disregard the safety and security of minors." [*Id.* ¶¶ 15, 18–25.] The FAC sets forth the following specific causes of action against the DCP&P Defendants:

- Violations of the 14th Amendment and the New Jersey Civil Rights Act;
- Violations of N.J.S.A. § 9:23-5, which codifies the ICPC;
- Intentional Infliction of Emotional Distress (IIED); and
- Negligence.[3]

Liberally construing the FAC, the Court will also consider potential claims against the individual DCP&P Defendants Amanda Hammond, Natasha Cranmer, and Virginia Kenny under 42 U.S.C. § 1983 ("Section 1983"). DCP&P Defendants have moved to dismiss the claims against them, with prejudice. [Docket No. 22-1, at 2.]

---

[3] The FAC purports to assert five causes of action but the pleading does not contain a "second" count. [Docket No. 18.]

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a claim can be dismissed for lack of subject matter jurisdiction, and Plaintiff "bears the burden of demonstrating [the Court's] subject matter jurisdiction." *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). An attack on subject matter jurisdiction can be a "facial attack' (*i.e.*, that Plaintiff did not properly plead jurisdiction) or a "factual attack" (one that involves an averment that jurisdiction is lacking in fact, including based on facts outside of the pleadings). *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In both scenarios, Plaintiff bears the burden of proving jurisdiction. *Id*. Here, the DCP&P Defendants' challenge to subject matter jurisdiction is a facial attack, so the Court must assume that the allegations in the FAC are true and construe them in the light most favorable to Plaintiff. *Id.*

### B.   Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

Relatedly, when considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss under 12(b)(6), asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

Importantly, "[i]n considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Dickerson v. New Jersey Inst. of Tech.*, 2019 WL 6032378, at *4 (D.N.J. Nov. 14, 2019) (citations omitted). This more liberal construction of *pro se* complaints does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See*, *e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers; . . . but we nonetheless review the pleading to ensure that it has sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.") (citations and quotations omitted); *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("[c]omplaints filed *pro se* are construed liberally, but even 'a *pro se* complaint must state a plausible claim for relief'") (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

### III.   ANALYSIS

DCP&P Defendants assert three main arguments in support of their pending Motion to Dismiss. [Docket No. 22.] First, DCP&P Defendants argue that as pled in the FAC, Plaintiff's procedural due process claims, arising pursuant to the Fourteenth Amendment and the New Jersey Civil Rights Act, as well as Plaintiff's claim arising pursuant to the ICPC, each fail to pass Rule 8 muster. [Docket No. 22-1, at 12–15.] Second, DEP&P Defendants argue that Plaintiff's state tort claims for intentional infliction of emotional distress and negligence are barred because Plaintiff failed to timely provide the requisite notice under the New Jersey Tort Claims Act. [*Id.* at 15–19.] Third, DCP&P Defendants argue that they are immune from the present suit under the doctrine of Eleventh Amendment sovereign immunity, and relatedly, that the claims against the individual DCP&P Defendants are barred under the doctrine of qualified immunity. The Court now addresses these arguments in turn.

    **A.**    **The FAC Fails to State a Plausible Claim for Violation of Plaintiff's Procedural Due Process Rights or Under the ICPC**

Although a *pro se* plaintiff's claims should be liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, it is Plaintiff's burden to plead enough "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the pleading stage, "a short and

plain statement of the claim showing that [he] is entitled to relief" is required by Rule 8(a)(2).

The Court agrees with the DCP&P Defendants that Plaintiff's allegations as set forth in the FAC fail to support a claim for procedural due process (under the Fourteenth Amendment or New Jersey's Civil Rights Act) or a claim against the DCP&P Defendants under the ICPC. Plaintiff argues that his procedural due process rights, as secured by the Fourteenth Amendment and the New Jersey Civil Rights Act, were violated when the DCP&P Defendants failed "to have court proceedings to legally give [Plaintiff]" custody over his minor children. [Docket No. 18 ¶ 15.] However, the DCP&P Defendants are correct that their agency does not have the authority to adjudicate a parent's private custody battle in state family court. [Docket No. 22-1, at 14.] Even if DCP&P initiated the custody proceedings underlying this action in state family court, Plaintiff could and should have petitioned the state family court for custody of his minor children. Plaintiff has no claim against the DCP&P Defendants for how the custody dispute was handled or ultimately decided by the reviewing state family court. *See* N.J.S.A. 9:2-3 ("When the parents of a minor child live separately, or are about to do so, the Superior Court, in an action brought by either parent, shall have the same power to make judgments or orders concerning care, custody, education and maintenance as concerning a minor child whose parents are divorced.")

The DCP&P Defendants are also correct that the agency never had the authority to transfer legal custody to Plaintiff, as such authority remained with the

11

state family court at all relevant times. *See* N.J.S.A. 9:2-18 ("An approved agency which is providing supervision of a child may institute an action in the Superior Court, seeking the termination of the rights of the parents of such child and the transfer of custody of such child to the agency.") Finally, the DCP&P Defendants are also correct that they cannot be held responsible for the abusive acts of Ms. Ramos. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) (concluding "that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"). In fact, in *DeShaney*, the U.S. Supreme Court considered nearly identical claims brought by the mother of a child who was beaten by the father and brought a civil rights action against social works and local officials who had received complaints of abuse. *Id.* at 189. The Court affirmed summary judgment in favor of the defendants on the mother's claims brought under the Due Process Clause of the Fourteenth Amendment, explaining that

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text.

[*Id.* at 195.] Accordingly, the Court finds that the FAC fails to state a procedural due process claim against the DCP&P Defendants.

The Court also agrees with the DCP&P Defendants that the FAC fails to state a plausible claim for relief for violating the ICPC because the statute, as codified at

12

N.J.S.A. § 9:23-5, does not afford Plaintiff with a private cause of action. Instead, the ICPC was "designed to promote the proper placement of children and to provide '[a]ppropriate jurisdictional arrangements for the care of children.'" *In re Adoption of Child by T.W.C.*, 636 A.2d 1083, 1086 (N.J. Super. Ct. App. Div. 1994) (quoting N.J.S.A. § 9:23-5); *see also Santos v. Cnty. of Los Angeles Dep't of Child. & Fam. Servs.*, 299 F. Supp. 2d 1070, 1075 n.5 (C.D. Cal. 2004), *aff'd sub nom. Santos v. Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 200 F. App'x 681 (9th Cir. 2006) (explaining that the ICPC governs "sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to possible adoption" among member states) (citations omitted). Thus, the ICPC is applicable to certain decisions made by the New Jersey family courts and family courts of other member states concerning the interstate placement of minor children. However, to put it simply, the ICPC does not govern actions by the DCP&P Defendants or official agency decisions regarding whether to initiate child removal proceedings. The FAC also fails to state a plausible claim for relief for Plaintiff's alleged claim under the ICPC.[4]

---

[4] Plaintiff also alleges in the FAC that DCP&P Defendants maintain "policies, practices, and conduct" that violate his constitutional right to procedural due process. [Docket No. 18 ¶ 41.] However, Plaintiff has failed to identify any particular policy or practice of DCP&P in support of this conclusory allegation. Thus, the Court finds that such allegations also fail to state a claim for violation of any of Plaintiff's constitutional or federal statutory rights.

### B. Plaintiff's Remaining State Tort Claims Are Barred Because He Failed to File a Pre-Suit Notice of Tort Claim

Plaintiff's remaining claims for IIED and negligence sound in state tort law. However, the New Jersey Tort Claims Act ("NJTCA") imposes clear notice requirements litigants must follow to pursue a tort claims against a public entity like DCP&P:

> The New Jersey Tort Claims Act, N.J.S.A. 59:1–1 to 13–10, imposes strict requirements upon litigants seeking to file claims against public entities. Under N.J.S.A. 59:8–8, a claimant must file a notice of claim upon a public entity or public employee "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8–8. The Legislature, however, has created a mechanism for obtaining discretionary relief from the strict ninety-day deadline; within one year after the accrual of the cause of action, N.J.S.A. 59:8–9 permits the filing of a motion for leave to file a late notice. This motion may be granted if the claimant has shown "sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim" within the statutory period of ninety days, and "that the public entity or the public employee has not been substantially prejudiced thereby." *Ibid*.

*McDade v. Siazon*, 32 A.3d 1122, 1125 (N.J. 2011). Here, DCP&P is clearly protected under the NJTCA, and Plaintiff is required to follow NJTCA's notice requirements to bring a tort claim against it. *See Rosario v. Div. of Youth & Fam. Servs.*, 2009 WL 605313, at *1 (N.J. Super. Ct. App. Div. 2009). Importantly, a failure to timely serve a Notice of Claim will result in the claimant being "forever barred from recovering against [the] public entity or public employee." N.J.S.A. § 59:8-8.

In their brief, the DCP&P Defendants criticize Plaintiff for not filing "a motion for leave to file a late notice of tort claim." [Docket No. 22-1, at 19.] However, this is not accurate. In fact, the Court previously denied such a motion by Plaintiff, in which he argued that the tortious conduct by the DCP&P Defendants

14

was ongoing and that his failure to timely file the requisite tort claim notice was due to extraordinary circumstances outside his control, namely because he was incarcerated in the State of Nevada. [Docket No. 39, at 3.] The Court determined that Plaintiff was still "required to serve a Notice of Claim on or before April 19, 2020," since Plaintiff had admitted that January 20, 2020, was the latest possible date on which he was first made aware of his claims and that "once an injury is known, even a minor one, the ninety-day notice is triggered." [*Id.* at 3, 6 (citation omitted).] However, no such notice was served. Since the motion to file a late notice of tort claim was not filed until February 28, 2022, the Court denied Plaintiff's motion. *See Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 618 (D.N.J. 2005) (explaining that "[o]nce the one-year outer time limit has passed, a court cannot allow late notice, and thus, cannot consider extraordinary circumstances or potential prejudice") (citations omitted); *see also Pilonero v. Twp. of Old Bridge*, 566 A.2d 546, 548 (N.J. Super. Ct. App. Div. 1989) (explaining that "[a]fter the one-year limitation has passed, the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim") (citations and internal quotations omitted). Accordingly, Plaintiff's tort claims for IIED and negligence against the DCP&P Defendants are "forever barred" and will be dismissed with prejudice.

    **C.**    **The DCP&P Defendants are Immune from Suit Under the Doctrines of Eleventh Amendment Sovereign Immunity and Qualified Immunity**

Eleventh Amendment sovereign immunity "has been interpreted to render states—and, by extension, state agencies and departments and officials when the

state is the real party in interest—generally immune from suit by private parties in federal court." *Howard v. New Jersey Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 812 (3d Cir. 2010) (dismissing damages and attorney fees claims against the New Jersey Division of Youth and Family Services—now DCP&P—because the agency was "immune from suit under the Eleventh Amendment") (citations omitted). Here, the Eleventh Amendment shields DCP&P and its officials acting within their official capacities. The relief sought in the FAC is limited to monetary damages. [Docket No. 18, at 18.] Thus, Plaintiff does not seek injunctive relief, and he has not alleged congressional abrogation or a waiver by the state of its immunity, such that none of the exceptions to Eleventh Amendment sovereign immunity are applicable. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). As such, the DCP&P Defendants are immune from the present suit, which is limited to allegations for acts taken within their official capacities to protect the welfare of children in New Jersey.

Individual DCP&P Defendants Amanda Hammond, Natasha Cranmer, and Virginia Kenny have also raised qualified immunity as a defense. [Docket No. 22-1, at 23–33.] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, qualified immunity will be applicable and "shiel[d] federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

As discussed above, the FAC fails to state a plausible claim for relief for Plaintiff's constitutional procedural due process rights or under the ICPC. In consideration of any potential claims under Section 1983 by Plaintiff, which "provides a federal forum to remedy many deprivations of civil liberties," importantly, Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983"). Because the allegations in the FAC implicate only actions taken by the individual DCP&P Defendants acting within their official capacities and taking the allegations in the FAC as true, none of Plaintiff's clearly established constitutional or statutory rights were violated. Thus, the individual DCP&P Defendants Amanda Hammond, Natasha Cranmer, and Virginia Kenny are immune from this suit under the doctrine of qualified immunity.

### IV.    CONCLUSION

The FAC fails to state a plausible claim for relief for any of Plaintiff's claims for violations of the ICPC, codified at codified at N.J.S.A. § 9:23-5, or procedural due process pursuant to the Fourteenth Amendment or the New Jersey Civil Rights Act. Further, the DCP&P Defendants are immune from such claims pursuant to the

applicable doctrine of Eleventh Amendment sovereign immunity, as well as qualified immunity in the case of the individual DCP&P Defendants Amanda Hammond, Natasha Cranmer, and Virginia Kenny. Plaintiff's remaining tort claims are also forever barred for failure to comply with the notice requirements of NJTCA. In light of the fact that Plaintiff had more than one opportunity to set forth his claims, the Court shall grant the pending motion by the DCP&P Defendants and dismiss the claims asserted against them with prejudice. An accompanying Order of today's date shall issue.

<u>December 22, 2022</u>                                            <u>s/Renée Marie Bumb</u>
Date                                                                          Renée Marie Bumb
                                                                                    U.S. District Judge